UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHAWN WOODWARD, (00-A-6563),

                Plaintiff,

v.

MULLAH, ET AL.,

                Defendants.

**REPORT, RECOMMENDATION AND ORDER**

08-CV-00463(A)(M)

---

This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings in accordance with 28 U.S.C. §636(b)(1) [9].[1] Before me are plaintiff's motions for partial summary judgment [40], for leave to amend [41], to join a new defendant [55], for appointment of counsel [46, 57], and for sanctions [71]. For the following reasons, I recommend that plaintiff's motions for partial summary judgment [40], and for leave to amend [41] be DENIED, and that plaintiff's motion to join a new defendant [55] be GRANTED. I also order that plaintiff's motion for appointment of counsel [46 and 57] and for sanctions [71] be DENIED.

**BACKGROUND**

Plaintiff, an inmate, commenced this 42 U.S.C. §1983 action *pro se* against defendants, employees of the New York State Department of Correctional Services ("DOCS"). Complaint [1]. Plaintiff alleges that defendant correctional officers Joseph Mullah, Paul Riccione and Joel Burridge assaulted him on March 22, 2008 at the Attica Correctional Facility and submitted false misbehavior reports regarding the incident (complaint [1], first cause of action),

---

[1]     Bracketed references are to the CM/ECF docket entries.

that defendant Correctional Officer Brenda Post conspired with these defendants to retaliate against plaintiff and violate his due process rights (id., second cause of action), that defendant Lieutenant Thomas Monin violated his due process rights during the tier III disciplinary hearings arising from the assault (id., third cause of action), that defendant Superintendent James Conway violated plaintiff's constitutional rights by denying plaintiff's grievances that led to the assault (id., fourth cause of action), and that defendant Bezio, Director of Special Housing Unit, violated plaintiff's constitutional rights by denying plaintiff's tier III appeal on June 16, 2008 (id., fifth cause of action).

I previously recommended that defendants' motion to dismiss the fifth cause of action against defendant Bezio based upon his lack of personal involvement be granted. November 4, 2009 Report and Recommendation [37]. My recommendation was adopted by Judge Arcara [51]. Plaintiff now moves for partial summary judgment on the second and third causes of action [40], to amend his complaint to replead the fifth cause of action against Bezio [41], to add Correctional Officer Delair as a defendant [55], and for appointment of counsel [46, 57].

## ANALYSIS

**A     Motion for Partial Summary Judgment**

Plaintiff was charged in two misbehavior reports dated March 22, 2008 with refusing a direct order to exit his cell for a cell search, failing to comply with frisk and search procedures, and having possession of a handmade knife which was discovered in his cell. Monin Declaration [59], Ex. A, p. 6. He selected three DOCS employees to assist him in preparing for

his Tier III disciplinary hearing: P. Hamilton, J. DeLair, and defendant Brenda Post. Plaintiff's Motion [40], Ex. A. DeLair was assigned to assist plaintiff and met with him on one occasion. Plaintiff's Motion [40], ¶5. After DeLair became unavailable during the course of his assistance, defendant Post assisted plaintiff.

A Tier III disciplinary hearing on the misbehavior reports was conducted before defendant Thomas Monin on April 4, 2008. Monin Declaration [59], Ex. A. At the conclusion of the disciplinary hearing plaintiff was found guilty of all of the charges in the misbehavior reports and defendant Monin imposed 12 months of SHU confinement and a 12 month loss of packages, commissary, and telephone privileges. Id., p. 17.[2] He also recommended that defendant lose 9 months of good time credits. Id.

### 1. Summary Judgment Standard

The standard to be applied on a motion for summary judgment in this Circuit is well settled. " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.] Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F.3d

---

[2] The last 3 months of plaintiff's sentence was suspended and/or deferred for 180 days. Monin Declaration [59] Ex. A, p. 17.

351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F. 3d 280, 285-86 (2d Cir. 2002)).

Plaintiff initially failed to submit a statement of undisputed material as required by Local Rule 56.1, which may be a basis for denial of his motion or result in the facts contained in defendants' Rule 56.1 Statement of Undisputed Facts [73] to be "deemed to be admitted" for purposes of ruling on defendants' motion for summary judgment. *See* Fleming v. Deaconess Hosp., 2006 WL 2792293, *1 n. 1 (W.D.N.Y. 2006) (Curtin, J.). However, following defendants' response, plaintiff rectified this omission [69]. Under these circumstances, I do not find that denial of the motion or deeming defendants' undisputed facts admitted is warranted.

### 2. Plaintiff's Second Cause of Action

Plaintiff's second cause of action alleges that defendant Post denied him effective assistance [1]. Defendants argue that defendant Post was not ineffective, and that even if she was, it was harmless error. Monin Declaration [59], ¶¶7-9.

Plaintiff alleges that he initially requested DeLair to obtain grievances, a copy of the B-Block logbook and the incident report and to interview the occupants of the adjacent cells. Complaint [1], Second Cause of Action, ¶2. He also alleges that he renewed his requests with defendant Post, who "refused to do anything plaintiff requested and left plaintiff's cell." Id., ¶3. However, the assistant form attached to plaintiff's motion tells a different story. [40], Ex. B. It indicates that plaintiff did not request any inmates to be interviewed as potential witnesses, that he was provided with an incident report and Directive #4410. Id. At the hearing, plaintiff's only

specific objection to the assistance he received was that he had received "some" of the requested grievances. Monin Declaration [59], Ex. A, pp. 2, 5-6.

At the outset, plaintiff argues that the audiotape of the disciplinary hearing "is not the actual wording you find in the transcripts" produced by defendants. Plaintiff's Motion [68], ¶3. Although plaintiff failed to move to strike the transcript submitted by defendants, which normally results in waiver of such argument (*see, e.g.,* Sellers v. M.C. Floor Crafters, Inc., 842 F. 2d 639, 643 (2d Cir. 1988) ("Rule 56(e) defects normally are waived where the party opposing the summary judgment motion fails to make a motion to strike before the district court"); Lakeview Outlets, Inc. v. Uram, 1997 WL 289221, *3 (N.D.N.Y. 1997)("Defendants are not moving to strike Grant's affidavit, however, and thus they are deemed to have waived this alleged Rule 56(e) defect."), I ordered defendants to produce the audiotape to me. January 27, 2010 text order [74]. After listening to the audiotape, I find that it contains very limited and minor variations from the transcript produced by defendants, but is not materially different.

Turning to the merits of plaintiff's motion, "prison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." Eng v. Coughlin, 858 F. 2d 889, 897 (2d Cir.1988). "It is clear that the scope of DOCS's obligation in this regard is significantly limited, and that an inmate's right to assistance in connection with a disciplinary hearing-which arises under the Due Process Clause of the Fourteenth Amendment . . . falls far short of the right to counsel that the Sixth Amendment guarantees to criminal defendants." Loving v. Selsky, 2009 WL 87452, *2 (W.D.N.Y. 2009) (Larimer, J.). *See* Ciaprazi v. Goord, 2005 WL 3531464, *13 (N.D.N.Y. 2005) ("While the requirements associated with the provision of such assistance are modest, they are not

non-existent. Under Wolff [v. McDonnell, 418 U.S. 539, 563-66 (1974)], an inmate facing a Tier III disciplinary hearing is entitled to meaningful assistance in preparing his or her defense."). However "where, as here, an inmate is already confined to SHU, the obligation to provide assistance is greater as the inmates' ability to prepare a defense is reduced." Hernandez v. Selsky, 572 F. Supp. 2d 446, 453 (S.D.N.Y. 2008).

Based on the record before me, I do not find that plaintiff has established a due process violation as a matter of law against defendant Post for her alleged failure to provide effective assistance. Plaintiff's claim that defendant Post "refused to doe [*sic*] anything for plaintiff" is undermined by the assistant form completed by defendant Post (plaintiff's motion [40], Ex. B), as well as plaintiff's statements at the disciplinary hearing. Monin Declaration [59], Ex. A, pp. 2, 5-6.

Even assuming that Post did not provide plaintiff with his prior grievances, such failure amounted to harmless error. *See* Pilgrim v. Luther, 2007 WL 233203, *5 (S.D.N.Y. 2007) ("In any event, the alleged failure by Vaughn to perform his duties as an assistant amounts to harmless error."). In defense of the misbehavior reports, plaintiff argued at the disciplinary hearing that they were in retaliation for his prior grievances. Monin Declaration [59], p. 3. Although plaintiff objected at the disciplinary hearing to not receiving copies of his prior grievances, defendant Monin advised him that he could testify about the grievances without the need for them being read into the record. Id., pp. 4-5. Discounting any claim of retaliation, plaintiff testified that the subject incident occurred three weeks after the grievances were made and that the individuals named in the grievances were different from those that participated in the

incident and at least one of the individuals named in the grievance worked a different shift from those that participated in the incident. Id., p. 16.

Ultimately, defendant Monin rejected plaintiff's defense, finding that his "reference to the reports be retaliation for writing grievances was not proven. By your own testimony the authors of these reports are not the staff that you previously grieved. Staff denied any retaliatory motivation stand on the accuracy the reports as written." Id., p. 17. Therefore, at this stage, I am unable to conclude that any error from Post's failure to provide plaintiff with her prior grievances was anything other than harmless.

Plaintiff "also is not entitled to the assistant of his choice . . . state regulations only afford the inmate the opportunity to select an assistant of his choice and do not require that this choice be honored". Gates v. Selsky, 2005 WL 2136914, *6 (W.D.N.Y. 2005) (Scott, M.J.), recon. granted on other grounds, 2005 WL 3132725 (W.D.N.Y. 2005). Thus, defendant Post replacing LeClair as his employee assistant does not give rise to a due process violation.

Therefore, I recommend that plaintiff's motion for summary judgment on his second cause of action be denied.

### 3. Plaintiff's Third Cause of Action

Plaintiff's third cause of action alleges that defendant Monin was not an impartial hearing officer and prohibited him from introducing documentary evidence, thereby violating his due process rights [1]. Defendants argue that defendant Monin did not violate his due process rights, and that even if he did, it amounted to harmless error. Monin Declaration [59].

A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing that person with notice and

an opportunity to be heard. *See* B.D. v. DeBuono, 130 F. Supp. 2d 401, 432-33 (S.D.N.Y. 2000).[3]
It is well settled that inmates retain due process rights in prison disciplinary proceedings. *See* Porter v. Goord, 2004 WL 2271383, *2 (W.D.N.Y. 2004) (Elfvin, J.) (quoting Hanrahan v. Doling, 331 F. 3d 93, 97 (2d Cir. 2003)). The Supreme Court has held that whenever an inmate is subjected to a prison disciplinary proceeding that might result in the deprivation of a liberty interest, prison officials must ensure that certain procedural safeguards are in place. *See* Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974). The inmate is entitled to call witnesses, present documentary evidence, and to have the proceeding adjudicated by an impartial hearing officer. *See* id. at 566, 571.

"An inmate subject to a disciplinary hearing is entitled to, *inter alia*, an impartial hearing officer." Patterson v. Coughlin, 905 F. 2d 564, 569 (2d Cir. 1990); Reynoso v. Selsky, 2007 WL 1237684, *3 (W.D.N.Y. 2007 ) (Siragusa, J.) ("An inmate is entitled to a fair and unbiased hearing officer' "). That entitlement "'is a fundamental requirement of due process . . . fully applicable' in the prison context". Ames v. Artuz, 1989 WL 54114, *4 (S.D.N.Y. 1989) "Any alleged bias or prejudice on the part of a decisionmaker 'must be evident from the record and cannot be based on speculation or inference.' " Reynoso, supra, 2007 WL 1237684 at *3.

Plaintiff alleges that defendant Monin prejudged his retaliatory defense as evidenced by the fact that the did not require defendant Post to provide him with copies of the grievances and by his statement that "[y]ou can write a grievance, you can say whatever you want

---

³ With respect to any due process claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Narumanchi v. Board of Trustees of Connecticut State University, 850 F. 2d 70, 72 (2d Cir. 1988). "An inmate has a protected liberty interest in not being confined only if the deprivation is atypical and significant . . ." Durran v. Selsky, 251 F. Supp. 2d 1208, 1214 (W.D.N.Y. 2003) (Larimer, J.). However, defendants do not oppose plaintiff's motion on this basis.

in a grievance. You could say Lieutenant Monin is gonna put a shank in my cell, he's gonna do it. I'm grieving that, he's harassing me. Then, the next day they find a shank and you try to say it's Lieutenant Monin. You can say whatever you want. You can bring that up in the testimony. I don't need the grievance. If there's mitigating circumstances present them to me. Okay?" Monin Declaration [59], Ex. A, p. 4. Although Monin's statement suggests that he may have been skeptical of plaintiff's retaliatory defense, he provided defendant with the opportunity to present his defense by granting plaintiff's request to call Officer Burge as a witness (although plaintiff then declined to question him) and providing him with the opportunity to question Officer Riccione. Id., pp.10-11, 13.

With respect to plaintiff's claims regarding defendant Monin's alleged refusal to obtain evidence supporting plaintiff's defense, as discussed above, I find that plaintiff has failed to establish that defendant Monin's denial of his request for grievances was not harmless. *See* Clark v. Dannheim, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) (Larimer, J.) ("To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing.").

Plaintiff also challenges defendant Monin's alleged denial of his request for the B-Block logbook. In response to plaintiff's request for the logbook, defendant Monin stated that "[i]f we need that we'll get it to verify a time". Monin Declaration [59], p. 3. However, plaintiff never attempted to address the significance of the logbook, and at the conclusion of the hearing was repeatedly asked by defendant Monin if he had any additional evidence that he wanted to present, but failed to renew his request for the logbook. Id., pp. 16-17.

Therefore, at this stage, I am unable to conclude as a matter of law that plaintiff is entitled to summary judgment on his third cause of action.

**B.      Motion to Amend[4]**

Plaintiff seeks to amend his complaint to replead the fifth cause of action I previously dismissed against defendant Bezio. Plaintiff's Motion [41]. In response, defendants argue that the motion should be denied as futile. Defendants' Memorandum of Law [53], Point I.

"The court should freely give leave [to amend] when justice so requires," Fed.R.Civ.P. ("Rule")15(a)(2), "and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). "Although courts commonly look to proposed amendments to determine futility, courts need not determine futility based only on an assessment of the proposed amendments-that is, the complaint presented to the court for its consideration. . . . Instead, courts may consider all possible amendments when determining futility." Panther Partners Inc. v. Ikanos Communications, Inc., 2009 WL 2959883, *4 (2d Cir. 2009) (summary order).

Plaintiff's initial complaint alleged that defendant "Bezio denied plaintiff's tier three appeal . . . thus allowing the above defendants to get away with violating plaintiff's Constitutional Rights and allowing plaintiff to remain in SHU confinement." [1]. I previously granted defendants' motion to dismiss the fifth cause of action against defendant Bezio without prejudice to refiling, finding that "based upon the limited allegations of the complaint,. . . plaintiff

---

[4]      "The motion to amend is considered dispositive in nature, because denying it would dispose of Plaintiff's proposed claims." Woodworth v. Erie Ins. Co., 2009 WL 3671930, *2 n.2 (W.D.N.Y. 2009) (Siragusa, J.).

has failed to sufficiently allege defendant Bezio's personal involvement in the underlying alleged due process violation." Report, Recommendation and Order [37], p. 5.

In his proposed amended fifth cause of action, plaintiff alleges that "every constitutional violation -known to plaintiff - that plaintiff suffered from, Bezio was made aware of this in plaintiff's appeal". Plaintiff's Motion [41], proposed fifth cause of action, ¶4. He also alleges that he filed a request for reconsideration, which Bezio failed to respond to. Id., ¶8.

These allegations do not cure the pleading deficiency with plaintiff's initial complaint. "The reference in case law to an official who 'fails to remedy' a violation logically applies only to ongoing, and therefore correctable, constitutional violations-not to a specific event that is later subject to formal review by designated officials once the constitutional violation has already concluded." Odom v. Calero, 2008 WL 2735868, *7 (S.D.N.Y. 2008) (Gorenstein, M.J.).[5] By the time Bezio ruled on plaintiff's appeal, the alleged constitutional violations by defendant Monin had concluded.

Plaintiff argues that the Monin's constitutional violation was ongoing until he served his sentence of SHU confinement. Plaintiff's Reply [62], ¶5. However, "once the hearing was over and [his] decision was issued, the due process violation was completed." Odom, supra, 2008 WL 2735868 at *7. For example, in Odom, supra, the plaintiff alleged that hearing officer violated his right to due process through her conduct at his disciplinary hearings at which he was sentenced to 455 days in the SHU. Id. at *1. The plaintiff alleged that the defendants violated his right to due process by affirming the decisions made at those hearings. In dismissing the claims

---

[5] Hon. Gabriel W. Gorenstein's Report and Recommendation in Odom was adopted by Hon. Lewis A. Kaplan on August 28, 2008.

against the defendants, the court concluded that "any constitutional violation allegedly committed by [the hearing officer] was concluded by the time [defendants] were called upon to review it. Accordingly, they were not 'personally involved' in committing the alleged due process violations." Id. at *7. Under the analogous allegations presented in plaintiff's proposed amended fifth cause of action, I find that plaintiff fails to establish that Bezio had any personal involvement in defendant Monin's due process violations.[6]

        Other courts have found personal involvement where the "official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results." Hamilton v. Smith, 2009 WL 3199531, *22 (N.D.N.Y. 2009), report and recommendation adopted as modified, 2009 WL 3199520. However, plaintiff's proposed amended fifth cause of action fails to meet this threshold. *Compare* id. ("Selsky was intimately involved with the hearings and rehearing which gave rise to Hamilton's due process claims as Selsky was the individual who signed all administrative findings and ordered the rehearing of Hamilton's disciplinary proceedings. This suffices to raise questions of fact as to Selsky's personal involvement.").

---

[6] Plaintiff's proposed amended fifth cause of action also fails to allege any personal involvement by Bezio in the alleged "conspiracy to retaliate for the exercise of First Amendment Right to freedom of speech". Plaintiff's Motion [41], proposed amendment, ¶9. *See* Vega v. Artus, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) ("where the personal involvement of a defendant in a Section 1983 violation is premised upon a claim of conspiracy, '[i]t is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.'").

For these reasons, I find plaintiff's proposed fifth cause of action to be futile as pled. Therefore, I recommend that plaintiff's motion to amend be denied.

**C.     Motion to Add a New Defendant**

Although Correctional Officer DeLair is repeatedly mentioned in plaintiff's complaint with respect to his second cause of action alleging ineffective assistance at the disciplinary hearing, he was not named as a defendant. Plaintiff now seeks to correct this omission by adding Correctional Officer DeLair as a defendant. Defendants oppose this motion, arguing that it would be futile to add Correctional Officer DeLair as he had no personal involvement in plaintiff's alleged claim of ineffective assistance. Defendants' Memorandum of Law [63], Point A.

According to defendants, plaintiff's assistance was provided by defendant Post. Id. However, the complaint alleges that plaintiff initially met with Correctional Office DeLair on March 24, 2008 and requested numerous materials, but "C.O. DeLair left and never returned to inform plaintiff about the outcome of his request." Complaint [1], Second Cause of Action. Thereafter, defendant Post allegedly took over as plaintiff's employee assistant. Id.

Under these circumstances, I find that the complaint sufficiently alleges Correctional Officer DeLair's personal involvement in the alleged lack of effective assistance plaintiff received for his disciplinary hearing. *Compare* Benitez v. Schlaggel, 1995 WL 581716, *4 (S.D.N.Y. 1995) ("Plaintiff cannot show the requisite personal involvement in the alleged denial of that right. Hann's only role in the alleged violation was to serve Plaintiff with the two misbehavior reports and the Assistant Selection Form from which Plaintiff was to choose three

possible staff assistants. . . . There is no evidence that Hann tried to prevent Plaintiff from obtaining assistance for the hearing."). Without passing on the likelihood of success of plaintiff's claim against Correctional Officer DeLair or the potential defenses (other than personal involvement) that can be asserted in response to this claim, at this stage, I do not find that amendment of the complaint to add Correctional Officer DeLair as a defendant to the second cause of action of the complaint would be futile. For these reasons, I recommend that plaintiff's motion to add Correctional Officer DeLair as a defendant be granted.

**D.     Motion for Sanctions**

Plaintiff seeks sanctions for defendants' failure to adhere to that aspect of my decision dated December 4, 2009 [50] that required them to respond by December 23, 2009 to plaintiff's request for the response to his undated letter to Commissioner Fisher (plaintiff's motion [13], Ex. A) that was allegedly sent on March 4, 2008. Decision and Order [50], p. 4. As a result of defendants' conduct, plaintiff seeks to strike "any and all defenses, objections and/or refutable testimony and all documents related to the defense(s) of the defendant that has been or will be raised for the reason(s) of defending themselves against plaintiff's claim # one." Plaintiff's Motion [71], ¶10.

In response to my December 4, 2009 Order, defendants stated that they "are still looking for information that may be responsive to this request but note that you have already been provided a letter from Lucien J. LeClaire Jr., Deputy Commissioner, dated 3/19/08 stating 'Commissioner Fischer has asked me to respond to your letters' (Bates No. 218) and a letter from Lucien J. LeClaire Jr., Deputy Commissioner, dated 4/18/08 stating 'Commissioner Fischer has

asked me to respond to your letter' (Bates No. 52])." Defendants' Additional Disclosure dated December 11, 2009 [52], ¶1. On December 28, 2009, defendants responded to a follow-up letter from plaintiff dated December 21, 2009 stating that they were not in possession of a letter from plaintiff dated March 4, 2008, and requested that he provide the Office of the Commissioner number ("OC#") for the letter so that they could attempt to locate the letter. State Declaration [77], Ex. A. According to defendants, plaintiff has failed to provide the OC#. Id, ¶5.

The record demonstrates that defendants have undertaken a search for the document sought by plaintiff in an effort to comply with my December 4, 2009 Order [50]. The fact that they have been unable to locate the response to plaintiff's undated letter does not make their conduct sanctionable. *See* Sobol v. E.P. Dutton, Inc., 112 F.R.D. 99, 102 (S.D.N.Y.1986) (defendant "swears that she did produce all documents which were in her possession and that any others not produced either do not exist, were not kept, were lost, or were misplaced . . . . She cannot produce, she asserts, that which does not exist or is neither in her possession nor under her control. If compliance is impossible there is no basis for imposing sanctions."). Therefore, I order that plaintiff's motion for sanctions [71] be denied.[7]

### E.   Motions to Appoint Counsel

Plaintiff moves for appointment of counsel because he "must bear his own discovery cost" thereby making it "impossible for plaintiff to depose anyone who may have relevant and important information concerning this case" Plaintiff's Motion [57], ¶8. He also

---

[7] In Kiobel v. Millson, 2010 WL 46785 (2d Cir. 2010), the Second Circuit has expressed uncertainty as to whether a magistrate judge is authorized to impose Rule 11 sanctions. Whether that uncertainty also applies to Rule 37 sanctions is unclear. If I lack the authority to decide the question on my own, then my decision on this question should be treated as a recommendation to Judge Arcara.

argues that he is "ignorant of the legality of a deposition" and that it "would be most appropriate to represent plaintiff not only at defendants deposition, but throughout". Plaintiff's Motion [46], ¶8.

There is no constitutional right to appointed counsel in civil cases. However, under 28 U.S.C. §1915(e), the Court may appoint counsel to assist indigent litigants. *See, e.g.*, Sears, Roebuck & Co. v. Charles W. Sears Real Estate, Inc., 865 F. 2d 22, 23 (2d Cir. 1988). The decision as to whether or not to assign counsel lies clearly within the court's discretion. *See* In re Martin-Trigona, 737 F. 2d 1254, 1260 (2d Cir. 1984). The factors to be considered include the following: (1) whether the indigent's claims seem likely to be of substance; (2) whether the indigent is able to investigate the crucial facts concerning his claim; (3) whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder; (4) whether the indigent has the ability to present the case; (5) whether the legal issues involved are complex; and (6) whether there are any special reasons why appointment of counsel would be more likely to lead to a just determination. *See* Hodge v. Police Officers, 802 F. 2d 58, 61-62 (2d Cir. 1986); Carmona v. United States Bureau of Prisons, 243 F. 3d 629, 632 (2d Cir. 2001).

I must consider the issue of appointment of counsel carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." Cooper v. A. Sargenti Co., Inc., 877 F. 2d 170, 172 (2d Cir. 1989). Therefore, I must first look to the "likelihood of merit" of the underlying dispute, Hendricks v. Coughlin, 114 F. 3d 390, 392 (2d Cir. 1997), and "even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the

indigent's claim are thin and his chances of prevailing are therefore poor." Carmona, supra, 243 F. 3d at 632 (denying counsel on appeal where petitioner's appeal was not frivolous, but nevertheless appeared to have little merit).

Plaintiff indicates that he intends to proceed with written depositions pursuant to Rule 31. Relying on my December 4, 2009 Decision and Order [50], plaintiff argues that he must pay for service of any subpoenas issued pursuant to Rule 31, but lacks the funds to do so. Plaintiff's Motion [57], ¶6. My December 4, 2009 Decision and Order [50] stated "'plaintiff is advised that he must bear his own discovery costs, including service of subpoenas on third parties. . . . Despite Plaintiff's *in forma pauperis* status, Plaintiff bears the burden of ensuring that service is completed according to the dictates of Rule 45.'" [50], p.12 (quoting Drum v. Clarke, 2007 WL 737329, *2 (W.D.Wash. 2007). However, plaintiff misinterprets Drum, supra (which admittedly does not not clearly identify the service fees it is referencing).[8]

"Pursuant to 28 U.S.C. §1915(a), Plaintiff's *in forma pauperis* status entitles him to . . . free service of process by United States Marshals, however, it does not entitle him to waiver of witness fees, mileage or deposition officer fees." Jackson v. Woodford, 2007 WL 2580566, *1 (S.D.Cal. 2007). *See* 28 U.S.C. §1915(d) ("The officers of the court shall issue and serve all process"); Malik v. Lavalley, 994 F.2d 90, 90 (2d Cir.1993) ("Federal courts are not authorized to waive or pay witness fees on behalf of an *in forma pauperis* litigant"); Murray v.

---

[8] I believe that service costs referenced in Drum are the fees that must be tendered along with the subpoena in order to complete service rather than the cost of actual service. *See* Brown v. De Filippis, 125 F.R.D. 83, 84 (S.D.N.Y. 1989) ("service is not complete unless fees are tendered to the witness").

Palmer, 2006 WL 2516485, *4 (N.D.N.Y. 2006) ("a litigant *proceeding in forma pauperis* does not have a right to a waiver of (1) the cost of a deposition stenographer, (2) the daily attendance fee and mileage allowance that must be presented to an opposing witness under Rule 45 of the Federal Rules of Civil Procedure, or (3) the copying cost of any deposition transcripts.").

Although I am mindful of plaintiff's financial limitations and its impact on his ability to conduct the full panoply of discovery available under the Federal Rules, including under Rule 31, plaintiff is not without means to investigate his case. He can and has made various document demands (*see, e.g.*, [13]) and can serve interrogatories. *See* LaBounty v. Coombe, 1996 WL 30291, *1 (S.D.N.Y.1996) ("Rule 31 of the Federal Rules of Civil Procedure allows for depositions upon written questions. The preference in this District in *pro se* prisoner actions is for interrogatories rather than depositions of defendants." citing McConnell v. Pepp, 1991 WL 50965, *1 (S.D.N.Y. 1991) ("Considering that plaintiff is an incarcerated prisoner proceeding *in forma pauperis*, we believe that the service of interrogatories by plaintiff is a more practical means of discovery.")).

Plaintiff has not shown that he is incapable of investigating the facts of this case or conducting discovery. While plaintiff's claims may not be frivolous, there is no strong indication that the claims are likely to have merit. Therefore, plaintiff's motions for appointment of counsel are denied without prejudice at this time.

If and when discovery reveals that the plaintiff's claims may be meritorious, he may reapply for counsel. However, at this time, it remains plaintiff's responsibility to retain an attorney or to prosecute this action *pro se*. 28 U.S.C. §1654. In order to assist plaintiff in

pursuing this case pro se, the clerk of the court is directed to send plaintiff the court's booklet entitled "Pro Se Litigation Guidelines".

**CONCLUSION**

For these reasons, I recommend that plaintiff's motions for partial summary judgment [40] and for leave to amend [41] be DENIED, and motion to join new defendants be GRANTED. I also order that plaintiff's motions for appointment of counsel [46, 57] be DENIED.

On or before March 8, 2010, plaintiff shall file his first amended complaint adding correctional officer DeLair as a defendant to the second cause of action and defendants' counsel shall advise me in writing as to whether he will accept service of the amended complaint on behalf of defendant DeLair. If not, I will order the Marshals to serve DeLair with a summons and a copy of the amended complaint.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the clerk of this court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the clerk of this court within 14 days after receipt of a copy of this Report, Recommendation and Order.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the district judge's refusal to consider the objection.</u>

**SO ORDERED.**

DATED: February 22, 2010

/s/ Jeremiah  J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge